**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

MICHAEL E. NEWHOUSE,

        Plaintiff,

        -vs-                              Case No.   04-C-654

DR. JOHNSON,[1] SYBIL VAN EVERY, R.N.,
JOHN DOE CORRECTIONAL OFFICER,
and JOHN DOE SUPERVISING NURSE,

        Defendants.

## DECISION AND ORDER

        The plaintiff, Michael E. Newhouse, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is proceeding *in forma pauperis* on claims that the defendants violated his constitutional right to receive adequate medical care.[2] Currently pending are Dr. Johnson's motion for summary judgment, Nurse Sybil's motion for summary judgment and John Doe's motion to compel and motion for summary judgment. All applications will be addressed herein.

**I.        FACTUAL BACKGROUND**

---

[1]     Dr. Johnson has been identified as Dr. Norman Johnson.

[2]     As will be discussed, *infra,* it is unclear whether the plaintiff was a pre-trial detainee at the time of the events giving rise to his claims. However, a claim of inadequate medical care made by a pre-trial detainee is brought under the Due Process clause of the Fourteenth Amendment, and analyzed in the same manner as a prisoner's medical care claim arising under the Cruel and Unusual Punishments clause of the Eighth Amendment. *Chavez v. Cady*, 207 F.3d 901, 904 (7th Cir. 2000).

On July 7, 2004, the plaintiff lodged a civil rights complaint against Kenosha County, the Kenosha County Sheriff's Department, Dr. Johnson, Nurse Sybil and John Doe. By order of September 7, 2004, the plaintiff was permitted to proceed on claims that the defendants violated his constitutional right to receive adequate medical care. Because the complaint did not indicate whether the plaintiff was a pretrial detainee or a convicted prisoner when the alleged wrongdoing occurred, the court noted that his medical care claim could arise under either the Eighth or Fourteenth Amendment. Also on that date, Kenosha County and the Kenosha County Sheriff's Department and were dismissed because they cannot be held liable for the potentially tortious acts of their employees.

On January 6, 2005, the court issued a scheduling order providing for the completion of discovery by April 6, 2005, and setting the deadline for dispositive motions as May 6, 2005. On April 6, 2005, John Doe filed a motion to compel discovery and to amend the scheduling order. On April 25, 2005, Nurse Sybil filed a motion for summary judgment. Then, on May 4, 2005, John Doe filed a motion for summary judgment, and on May 6, 2005, Dr. Johnson filed a motion for summary judgment.

By order of January 18, 2006, all motions for summary judgment were denied for failing to provide the plaintiff with the summary judgment notice statement required under Civil L.R. 56.1. The court further denied John Doe's motion to amend the scheduling order but ordered the plaintiff to respond to Doe's motion to compel on or before February 13, 2006.

2

All defendants subsequently filed renewed motions for summary judgment. On February 27, 2006, the plaintiff requested an extension of time in which to file a response the defendants' motions. Thus, on March 6, 2006, the court granted the plaintiff's request and allowed him until April 17, 2006, in which to respond to the defendants' motions. The plaintiff filed his response to the defendants' motions on April 18, 2006. Upon due consideration, the court will consider the plaintiff's April 18, 2006, response as timely filed. Accordingly, all motions are fully brief and ready for disposition.

**A. Standard of Review**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence

3

presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id*. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id*. at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

**B. Preliminary Matters**

Dr. Johnson asserts that his proposed findings of facts should be considered undisputed because the plaintiff did not properly respond to Dr. Johnson's proposed findings of fact. (Dr. Johnson's Reply Brief in Support of Mot. for Summary Judgment at 2). Specifically,

4

Dr Johnson submits that the plaintiff's response fails to provide specific citations to evidentiary materials in the record. *Id.* In addition, defendant Van Every contends that summary judgment should be granted in her favor because the plaintiff failed to submit an affidavit with his response to Van Every's motion. (Sybil Van Every, R.N.'s Reply Brief in Support of Mot. for Summary Judgment at 2).

A review of the plaintiff's response reveals that the defendants are correct on this point. That is, the plaintiff's April 18, 2006, response to the defendants' motions is two pages long, contains no reference to any proposed findings of fact and is not notarized.

At summary judgment, the facts at issue must be established through documents that ensure reliability and veracity, such as depositions, answers to interrogatories, admissions and affidavits. *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). If a complaint is sworn it will be treated as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996). Thus, a prisoner plaintiff can demonstrate the veracity of a document by swearing under penalty of perjury that his statements are true. *See* 28 U.S.C. § 1746.

In this case, the complaint has been verified pursuant to 28 U.S.C. § 1746. Therefore, the facts section will include information from the verified complaint and attached exhibits, as well as the defendants' affidavits and exhibits. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (Inmate's verified response constituted competent evidence to rebut defendants' motion

5

for summary judgment).³  Accordingly, the defendants' proposed findings of fact will not be considered as undisputed.

An initial comment is also necessary with respect to the affidavits submitted by defendants Van Every and Dr. Johnson. In her affidavit, defendant Van Every describes the medical care that she provided to the plaintiff. For example, she states that the plaintiff was provided aspirin because he had an allergy to tylenol and ibuprofen. (Affidavit of Sybil Van Every [Van Every Aff.] ¶¶6-7). Similarly, Dr. Johnson's affidavit outlines the medical care that he provided the plaintiff. For example, Dr. Johnson states that he reviewed the plaintiff's medical records and determined that the plaintiff did not show any evidence of osteoporosis or degenerative osteoarthritis, which the plaintiff alleged to have. (Affidavit of Dr. Norman Johnson [Johnson Aff.] ¶12).

It appears that Van Every and Dr. Johnson's affidavits refer to the plaintiff's medical records. However, neither defendant has included in their summary judgment materials a copy of the plaintiff's medical records. Fed.R.Civ.P. 56(e) provides that, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Thus, Van Every and Dr. Johnson's affidavits are deficient and would generally be inadmissible at summary judgment. In this case, however, the plaintiff has not challenged or disputed the form of the defendants' affidavits. Therefore, his admissions cure any deficiencies

---

³ The complaint, which starts on page three, is ten pages long. In the interest of simplicity, the court will refer to the amended complaint as it is numbered in the Electronic Case Filing (ECF) system, with the first page of the document being page number 1 and the last page of the document being page number 10.

6

in the defendants' presentation. *See* Fed. R.Civ.P. 56(c); *Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003). Thus, the information contained in the affidavits of Dr. Johnson and Sybil Van Every shall be admitted.

**C. Relevant Undisputed Facts**

The plaintiff was incarcerated at the Kenosha County Jail ("the jail") at all times relevant. (*See* Complaint [Compl.] at 2). Dr. Norman Johnson is a licensed medical doctor and the jail medical director. (Johnson Aff. ¶3). Defendant Sybil Van Every, R.N. was formerly employed as a nurse with the Kenosha Visiting Nurses Association. (Van Every Aff. ¶1). She was assigned to the jail when the events giving rise to the complaint occurred. *Id.* Defendant John Doe is a supervising nurse and correctional officer. (Compl. at 5).

As the jail medical director, Dr. Johnson visits the jail at least once a week and usually sees patients that require his attention during that time. (Johnson Aff. ¶4). The inmates may make any physical complaints or requests directly to the nursing staff. *Id.* If the nurses are qualified to assess the problem and handle it, they do so. *Id.* Dr. Johnson talks to the nurses daily about any patient concerns or problems. *Id.* If a medical problem arises that is beyond the nurses' abilities, they refer the patient to Dr. Johnson. *Id.*

The plaintiff entered the jail on October 14, 2003. (Compl. at 4). Prior to his arrival, the plaintiff had been treated at the Kenosha Memorial Hospital Emergency Room ("the hospital"), where he was diagnosed with "head and facial contusions" and prescribed aspirin with

7

codeine. *Id.* The plaintiff claims that he was not given tylenol or ibuprofen because he is allergic to both drugs. *Id.*

At the hospital, the plaintiff also complained of back and neck problems. (Johnson Aff. ¶6). An x-ray was taken which showed mild chronic degenerative changes in the cervical spine. *Id.* However, there were no other problems and no acute abnormalities. *Id.*

The plaintiff alleges that he suffers from "degenerative osteoarthritis throughout his spine and neck, whereby his lower spine is fusing together pinching and killing nerves. The pain experienced is skeletalmuscular (sic), very deep acute pain with such severity one could one wish to God to stop the pain." (Compl. at 3). A nurse assessed the plaintiff at the jail on October 15, 2003. (Johnson Aff. ¶7). Dr. Johnson was contacted on October 15, 2003, and informed of the plaintiff's complaints. *Id.* Dr. Johnson ordered that aspirin and ice bags be applied to the injured areas. *Id.*

Approximately one week later, on October 21, 2003, Dr. Johnson asked to see the plaintiff for a follow-up appointment. *Id.* The plaintiff refused to see Dr. Johnson and did not follow-up as ordered. *Id.* However, the plaintiff did continue to receive aspirin for pain as needed. *Id.*

Over the next several months, the plaintiff had consistent and frequent contact with the nurses employed at the jail. (Johnson Aff. ¶8). Dr. Johnson, however, did not receive any requests from the plaintiff for treatment during this time. *Id.*

8

The plaintiff alleges that he was attacked by his cellmate on November 23, 2003, thereby aggravating his back pain. (Compl. at 5). The nursing staff evaluated the plaintiff after the incident and found that he was not in any acute distress. (Johnson Aff. ¶9). When an intern nurse from Marquette University attempted to examine the plaintiff's back, John Doe terminated the examination. (Compl. at 5). After the exam, the plaintiff continued to receive aspirin as needed. (Johnson Aff. ¶9).

On May 11, 2004, Dr. Johnson saw the plaintiff for complaints of chronic back pain. (Johnson Aff. ¶10). At this appointment, the plaintiff requested aspirin with codeine. (Van Every Aff. ¶6). Dr. Johnson conducted a routine assessment of the plaintiff. *Id.* During the examination, Dr. Johnson noted that the plaintiff had a full range of motion in his back as well as negative straight leg raising. *Id.*

The plaintiff's deep tendon reflexes were impossible to obtain because he consciously held himself very "stiff" and indicated that he could not elicit any reflexes. *Id.* Thus, Dr. Johnson was suspicious of the plaintiff's presentation and considered the possibility that he was exaggerating his symptoms in an effort to obtain medication. Overall, Johnson assessed the plaintiff's May 11, 2004, examination as normal. *Id.*

Dr. Johnson determined that the plaintiff did not require the narcotic that he requested. (Van Every Aff. ¶7). Instead, Dr. Johnson noted that with exercise and regular aspirin, his condition would remain stable. *Id.*

9

The plaintiff has alleged that during his examination, he requested outside medical treatment. (Compl. at 5). He alleged that defendant Van Every told him that he would not get outside care "unless [he] was pregnant or dying." (Compl. at 6). On May 11, 2004, Van Every's sole duties concerning the plaintiff were to: (1) walk him into the treatment room where he would be seen and evaluated by Dr. Johnson; (2) walk him out of the treatment room following his examination by Dr. Johnson; and (3) carry out whatever orders were noted by Dr. Johnson. (Van Every Aff. ¶5). Other than dispensing aspirin to the plaintiff for his symptoms, Van Every did not provide the plaintiff any medical treatment. (Van Every Aff. ¶8).

After the plaintiff's May 11, 2004, appointment, Dr. Johnson continued to review the plaintiff's medical records to evaluate his complaints. (Johnson Aff. ¶10). The medical staff had a difficult time obtaining the plaintiff's medical records. (Johnson Aff. ¶11). The medical staff forwarded the medical releases that the plaintiff signed, but a number of providers that the plaintiff stated he received treatment from had no record of treating him. *Id.* The plaintiff suggested that the medical staff was not able to get his medical records because he had been non-compliant and had failed to pay his outstanding medical bills. *Id.*

Dr. Johnson reviewed the plaintiff's available medical records that he was able to collect, including the October 2003, x-ray. (Johnson Aff. ¶12). Based upon his review of the records and assessment of the plaintiff, Dr. Johnson concluded that the plaintiff did not demonstrate any evidence of osteoporosis or degenerative osteoarthritis. *Id.* Dr. Johnson noted only mild degenerative changes for which treatment with occasional aspirin and exercise was

10

appropriate and adequate. *Id.* Dr. Johnson did not believe that the plaintiff required any narcotics, prescription medication or outside medical treatment. *Id.*

Dr. Johnson saw the plaintiff for a follow-up visit on July 6, 2004. (Johnson Aff. ¶13). At that time, the plaintiff denied having any additional problems. *Id.* Therefore, Dr. Johnson continued ordering the aspirin on an "as needed" basis. *Id.* This was Dr. Johnson's last contact with the plaintiff. *Id.*

## II. DISCUSSION

### A.  Dr. Norman Johnson's Motion for Summary Judgment

The plaintiff asserts that Dr. Johnson denied him adequate medical care. Specifically, he maintains that Dr. Johnson delayed the plaintiff's medical care and failed to give him medication for severe pain. In response, Dr. Johnson asserts that he is entitled to summary judgment because the plaintiff cannot demonstrate that he was deliberately indifferent to the plaintiff's serious medical need.[4]

As noted, it is unclear whether the plaintiff was a pretrial detainee or a convicted prisoner at the time the alleged wrongdoing occurred. However, claims under the Eighth and Fourteenth Amendments are analyzed under the same standard. As the court in *Whiting v. Marathon Co. Sheriff's Dep't*, 382 F.3d 700 (7th Cir. 2004), explained:

---

[4] The court notes that Dr. Johnson also contends that the plaintiff cannot prevail on a medical malpractice claim because he has failed to produce any expert medical testimony. (Dr. Johnson's Brief in Support of Mot. for Summary Judgment at 7-8). However, the plaintiff is not proceeding on a state medical malpractice claim. Furthermore, the Eighth Amendment deliberate indifference standard is higher than that of medical malpractice. *Kelly v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990). Deliberate indifference requires a certain culpable mental state comparable to criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). For these reasons, the court will disregard Dr. Johnson's medical malpractice arguments.

11

> "The distinction [between pretrial detainee and prisoner status] is immaterial since the legal standard for § 1983 claim is the same under either the Cruel and Unusual Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment."

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois,* 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison

12

officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. See *Salazar v. City of Chicago,* 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42).

Dr. Johnson contends that the plaintiff did not suffer from an objectively serious medical need. It is undisputed that the plaintiff was treated by Dr. Johnson on May 11, 2006, and Dr. Johnson did not see any signs of degenerative osteoarthritis. In addition, Dr. Johnson's review of the plaintiff's available medical records did not support a finding that the plaintiff suffered from degenerative osteoarthritis. Indeed the plaintiff's x-rays revealed only mild chronic degenerative changes in the cervical spine. The plaintiff has offered no admissible evidence to dispute these findings. Thus, he has failed to establish that he had a serious medical need. *See Farmer,* 511 U.S. at 834.

Assuming the plaintiff could prove a serious medical need, Dr. Johnson asserts that his conduct does not rise to the level of deliberate indifference. Specifically, Dr. Johnson did not believe that the plaintiff required the aspirin with codeine which he requested. Instead, he ordered that the plaintiff be provided with plain aspirin. In addition, he noted that the plaintiff's condition could be stabilized with exercise and aspirin as needed. The fact that the plaintiff did not agree with Dr. Johnson's diagnosis and course of treatment does not prove a constitutional

13

violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Moreover, under the Eighth Amendment, a plaintiff is not entitled to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (inmates are not entitled to the "best care possible," but to reasonable measures to prevent "a substantial risk of serious harm.").

The plaintiff contends that he was denied medical care for three days and when he was finally treated he only received aspirin and an ice pack. (Compl. at 4). The record reveals that the plaintiff was brought to the jail on October 14, 2003. A nurse assessed the plaintiff on October 15, 2003. Then, Dr. Johnson was contacted and he ordered that the plaintiff be given aspirin and ice for his injuries. The plaintiff was supposed to see Dr. Johnson for a follow up appointment on October 21, 2003. However, he refused to meet with Dr. Johnson.

Contrary to the plaintiff's assertion, he was not denied medical care for three days after he arrived at the jail. Rather, he received treatment the day after he arrived. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)). This the plaintiff has failed to do.

The plaintiff also asserts that he had to wait seven months to be seen by Dr. Johnson. (Compl. at 5). It is unclear what time frame the plaintiff is referring to. Regardless, the plaintiff has not established that he suffered from a serious medical need. *Farmer,* 511 U.S. at 834. Moreover, he has not presented any evidence that the alleged delay in treatment resulted in any

14

actual detriment. *Langston*, 100 F.3d at 1240. Based on the foregoing, the plaintiff has failed to demonstrate that Dr. Johnson was deliberately indifferent to his serious medical need. Accordingly, Dr. Johnson's motion for summary judgment will be granted.

**B.  Sybil Van Every's Motion for Summary Judgment**

The plaintiff avers that defendant Van Every denied him outside medical care. Defendant Van Every responds that the plaintiff's cannot prove that she was deliberately indifferent to his serious medical need.[5]

The plaintiff asserts that defendant Van Every told him that he would not get outside care "unless [he] was pregnant or dying." (Compl. at 6). It is undisputed that on May 11, 2004, Van Every's sole duties concerning the plaintiff were to: (1) walk him into the treatment room where he would be seen and evaluated by Dr. Johnson; (2) walk him out of the treatment room following his examination by Dr. Johnson; and (3) carry out whatever orders were noted by Dr.

---

[5]Defendant Van Every has also alleged that the plaintiff cannot prove a state medical malpractice claim.  As noted, deliberate indifference requires more than medical malpractice. *Kelly*, 899 F.2d at 616.  Moreover,   the plaintiff is not proceeding on a state medical malpractice claim.  Thus, it is not necessary to address           defendant Van Every's medical malpractice arguments.

15

Johnson. Other than dispensing aspirin to the plaintiff for his symptoms, Van Every did not provide the plaintiff any medical treatment.

It is unclear how defendant Van Every's comment, even if true, rises to the level of deliberate indifference. Van Every was not responsible for evaluating or diagnosing the plaintiff. Nor was she responsible for arranging outside medical care. Indeed, she only provided the plaintiff with medical care that was ordered by Dr. Johnson. At most, the plaintiff's allegation amounts to negligence. However, negligence is not enough to sustain a claim under 42 U.S.C. § 1983. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996). Thus, defendant Van Every's motion for summary judgment must be granted.

**C. John Doe's Motion for Summary Judgment and Motion to Compel**

The plaintiff alleges that John Doe violated his right to receive adequate medical care when Doe allegedly interrupted the plaintiff's November 23, 2003, medical examination. In response, Doe contends that he is entitled to summary judgment on the following grounds: (1) the plaintiff failed to serve him within 120 days as required under Fed.R.Civ.P. 4(m); (2) dismissal is warranted under Fed.R.Civ. P. 16(f) because the plaintiff failed to comply with a discovery order directing him to respond to Doe's motion to compel; (3) the plaintiff's failure to prosecute this action justifies dismissal under Fed.R.Civ.P. 37(b); and (4) the plaintiff has failed to establish that he suffered a serious medical need.

16

First, Doe submits that this action should be dismissed because the plaintiff failed to serve him within 120 days. Fed.R.Civ.P. 4(m) states, in pertinent part:

> If service of the summons and complaint is not made upon a defendant within 120 days of the filing of the complaint, the court...shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

A prisoner suing *in forma pauperis* may rely on the United States Marshals Service to serve process. 28 U.S.C. § 1915(c); Fed.R.Civ.P. 4(c)(2). *Graham v. Satkoski*, 51 F.3d 710 (7th Cir. 1995). The prisoner must furnish the United States Marshals Service only with information necessary to identify the defendant. *Satkoski,* 51 F.3d at 713. The failure of the Marshals Service to complete service is considered "good cause" to extend the time for service under Fed.R.Civ.P. 4(m). *Id.*

The plaintiff filed this action on July 7, 2004. The complaint names "John Doe," a Correctional Officer and Supervising Nurse, as a defendant. As of today, the plaintiff has not identified or served John Doe. Further, the plaintiff has failed to provide the Marshals Service with enough information to effectuate service of process on John Doe. That is, he has not given any indication as to Doe's location, sex, or name. Thus, the plaintiff has failed to show good cause for an extension of time.

In *Aviles v. City of Chicago*, 160 F.R.D. 565 (N.D. Ill. Feb, 23, 1995), the plaintiff alleged that several unknown police officers used excessive force during his arrest. The complaint named the unknown officers as John Doe defendants. *Aviles*, 160 F.R.D. at 566.

17

When the John Doe defendants filed a motion to dismiss for failure to serve them within the 120 days, the court held that the since the plaintiff had "initiated discovery aimed at determining the officers' identities...we are hesitant to dismiss a potentially meritorious lawsuit on essentially procedural grounds when such discovery requests are outstanding." *Id*. at 568.

The present case is distinguishable from *Aviles* on several grounds. In particular, the plaintiff has no pending discovery requests. Indeed, the plaintiff has never propounded any discovery upon John Doe. Moreover, the plaintiff did not respond to John Doe's discovery request or his motion to compel. Based on this, it appears that the plaintiff has not sought to identify and serve John Doe in a timely manner. Thus, John Doe's motion for summary judgment will be granted.

As a final matter, John Doe has filed a motion to compel. However, summary judgment has been entered in defendant Doe's favor. Accordingly, his motion to compel shall be denied as moot.

## ORDER

**IT IS THEREFORE ORDERED** that defendant Dr. Johnson's motion for summary judgment (Doc. # 50) is **granted.**

**IT IS FURTHER ORDERED** that defendant Sybil Van Every's motion for summary judgment (Doc. # 53) is **granted.**

**IT IS ALSO ORDERED** that defendant John Doe's motion for summary judgment (Doc. # 52) is **granted.**

18

**IT IS ORDERED** that defendant John Doe's motion to compel (Doc. # 25 ) is **denied as moot.**

**IT IS ORDERED** that this case is dismissed and the Clerk of Court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of September, 2006.

**SO ORDERED,**

**s/ Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**